RICHDEL, INC., Plaintiff-Appellant,

v.

SUNSPOOL CORPORATION, Defendant-Appellee.

Appeal No. 83–611.

United States Court of Appeals, Federal Circuit.

Aug. 3, 1983.

Keith D. Beecher, Santa Monica, Cal., argued, for plaintiff-appellant. With him on the brief was Jack M. Wiseman, San Jose, Cal.

Alan H. MacPherson, Santa Clara, Cal., argued, for defendant-appellee.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and KASHIWA, Circuit Judge.

RICH, Circuit Judge.

This appeal is from the October 22, 1982, judgment of the United States District Court for the Northern District of California holding claim 1 of U.S. patent No. 4,191,166 (the '166 patent), owned by appellant Richdel, Inc. (Richdel), invalid and unenforceable and dismissing the suit. We affirm.

Jurisdiction in this court is under 28 U.S.C. § 1295(a)(1), the above judgment being a "final decision."

### Background

The '166 patent, entitled "Solar Heat System," was granted March 4, 1980, to Saarem et al. on an application filed December 27, 1977. Figure 1 thereof is reproduced below:

FIG.I

The figure is a schematic representation of one embodiment of the claimed invention. Shown in the drawing are solar collector 10, valve module 20, pump module 12, storage tank 16, and control module 32. Solid lines represent fluid flow pathways and evenly broken lines show electrical connections. The dot-and-dash lines encompass the module elements. Also shown in the drawing are temperature sensors 34 and 36 disposed to sense the temperatures of the water in the collector and storage tank, respectively.

The sensors, control module, and valve module cooperate to perform several functions, most notably to shut the system down and drain the collector when it is so cold outside that the water would otherwise freeze in and damage the collector. The sensors detect the dangerously cold condition, and the control module responds, causing valve 28 to close and valves 22 and 26 to open, thereby draining the collector.

This feature is sometimes referred to as automatic drain-down. The other functions performed are prevention of excessively hot water, and shut down when the sensors indicate that no solar heat is available.

Claim 1, the only claim on appeal, in numbered, paragraphed form stipulated to by the parties, reads as follows:

In a solar water heater system which includes a collector, a storage tank, a circulating pump, and pipeline means intercoupling the collector, storage and circulating pump to enable the pump to circulate a fluid through the collector to be heated therein, and returned to the storage tank, said pipeline means including a supply line extending from the pump to the collector and a return line extending from the collector to the storage tank; the combination of:

(1) a drain line,

(2) an electrically energized valve module coupling the pipeline means to the drain line, and

(3) a control module connected to the valve module for selectively establishing the valve module in an energized operating condition in which a circulating path for the fluid is established from the pump through the collector to the storage tank, and for selectively establishing the valve module in a de-energized operating condition in which the fluid in the collector is discharged through the drain lines;

said valve module including:

(a) electrically activated means for selectively establishing the valve module in its energized operating condition in response to an electric signal from the control module, and

(b) spring means for establishing the valve module in its de-energized operating condition in the absence of such electrical signal,

and said valve module further including

(c) a first valve interposed in the supply line, said first valve being set to an open operating position by said electrically activated means when said valve module is in its energized operating condition, and said first valve being set to a closed operating position by said spring means when said valve module is in its de-energizing operating condition, and

(d) said valve module including a pair of valves respectively coupling the supply line and the return line to the drain valve, said pair of valves being set to a closed position by said electrically activated means when said valve module is in its energized operating condition, and said pair of valves being set to an open position by said spring means when said valve module is in its de-energized operating condition.

Figure 6 of the '166 patent shows the type of valve disclosed. While the valve module figures prominently in the claim, the claim appears to be directed to a subcombination in a solar heater *system*, not to the valve module per se. Realistically read, the claimed *combination* includes practically all the elements of the entire system.

FIG.6

Operate-Valve 28 Open Motor Energized

Drain-Valve 28 Closed Motor De-Energized

The figure on the left shows the valve, which Richdel describes as a multi-port disc valve, in an open or normal operating position, in which the disc 68 is held in turned position by a stalled motor. In this position, port V communicates with central port D. To drain the system, the motor is de-energized, and a biasing spring turns disc 68 to the position shown in the right hand figure. In this position, port V communicates with port P and ports C1 and C2 with port D. Ports C1 and C2 correspond to valves 22 and 26 in Fig. 1. Valve 28 in Fig. 1 is a diaphragm valve with an actuating chamber containing port V. This means that valve 28 is open or closed according to whether port V is open or closed. A valve such as valve 28 which is controlled by the flow of fluid through a smaller associated valve is called a pilot-operated valve, and the smaller valve is called the pilot valve.

The prior art relied upon by the district court includes U.S. patent No. 4,119,087 to Cook. The Cook system is shown in Fig. 1 of his patent, reproduced below:

*Fig. 1*

The Cook system has a solar energy collector 10, solenoid valves 20, 24, 25, and 26, a solar circulator or pump 17, storage tank 1, control box 27, and sensor 19. The figure does not show that the control box 27, sensor 19, and the solenoid valves are electrically interconnected to effect freeze protection.

The other prior art is a system manufactured by Sunsav, Inc., a valve package manufactured by Heliotrope General, and U.S. patent No. 4,061,132 to Ashton et al. The Sunsav system is similar to the Cook system except that it uses a pair of three-way solenoid valves rather than three separate valves. The Heliotrope General valve package comprises a pair of solenoid valves. It was designed to be used with an existing solar water heating system and, when used with a separately available control system, implemented automatic drain-down in that system. The Ashton patent discloses a solar swimming pool heater which drains au-

tomatically when the sunlight is not heating the water.

The type of valve used in all of these prior art systems is a pilot-operated solenoid valve. In such a valve, the flow through the pilot valve is controlled by a rod inserted into the hollow center of a cylindrical coil. The rod moves according to the presence or absence of a solenoidal magnetic field created by the flow of electrical current through the coil. In this fashion, fluid flow can be controlled by controlling the electrical current. The record indicates that these valves proved unsatisfactory for drain-down applications for several reasons: they are noisy; they consume large amounts of power; and, as pilot-operated valves, they depend on flow through small orifices which easily become clogged with particulate contaminants commonly found in water supplies.

None of the prior art relied on by the district court was cited by the Patent and Trademark Office (PTO) during the course of prosecution of the '166 patent.

Richdel alleged contributory infringement under 35 U.S.C. § 271(c) by defendant Sunspool based upon its manufacture, use, and sale of "drain valves embodying the invention of" the '166 patent. Sunspool manufactures a multi-port spool valve which it bills as "The reliable drain-down valve for solar collector freeze protection." This spool valve has a thermosensitive actuator which contracts or expands along its length according to its temperature. The actuator is disposed in close proximity to an electrically resistive element. The amount of current through the element controls its temperature, and thereby controls the length of the actuator. Sunspool's valve is described in its literature as a "direct acting spool mechanism for positive flow control," and is therefore not a pilot-operated valve. Richdel's Vice President of Engineering, one of the '166 patentees, testified that Richdel redesigned the commercial embodiment of its solar water heating system to include spool valves instead of the disc-type valve described in the '166 specification af-

ter complaints about performance of the latter.

*Trial Court Findings and Conclusions*

After hearing the case without a jury, the court apparently adopted Sunspool's 41 proposed findings of fact and 14 proposed conclusions of law in their entirety. Among the salient findings of fact were findings that the commercial embodiment of the system described in the '166 patent had enjoyed a certain amount of commercial success, but that there had been no showing that "the patented improvement had contributed to the commercial success," and that prior art systems had had problems, but that it had not been shown that the subject matter claimed in the '166 patent had solved those problems.

The factual determinations duly included those ordained in *Graham v. John Deere,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), when deciding the obviousness issue under 35 U.S.C. § 103, on the scope and content of the prior art, the differences between the claimed invention and the prior art, and the level of skill in the art. As to the differences, the court found that the term "module" refers to an assembly of components connected together to form a functional package, that "module" is so used in the '166 patent in referring to the control module, and that the '166 specification does not limit the "valve module" recited as part of the claimed combination to the single integrated valve operated by a single electrically energized actuating element shown in Fig. 6, supra. The court therefore concluded that "at best, the only difference between the prior art and the claimed subject matter is that the patentees have combined into one integrated unit that which was previously constructed from separate elements and then packaged in an integrated form."

The court adopted conclusions of law including the following: Richdel has not shown that any of the four prior art references has been considered by the PTO, wherefore Richdel, the patentee, had the burden of proving nonobviousness. "The

ultimate question, however, is one of law: Are the differences [between the claimed invention and the prior art] of such magnitude that they would not have been evident at the time of invention to one possessed of ordinary skill in the art." The '166 patent is a so-called "combination patent," that is, a patent which claims a new combination of known elements, wherefore a "searching and thorough inquiry" is called for because "patentable invention is less likely to be found in a combination of old elements." The claimed invention would have been obvious; "while there may be innovation in the claimed combination, innovation is not invention." This conclusion is buttressed by the absence of any unusual or surprising results, and by the fact that key elements of the invention had been contemporaneously and independently developed by others. The proffered evidence of commercial success is not persuasive because, first, "where a patent is obvious, it cannot be saved from invalidity by resorting to secondary factors," and second, because there has been no showing that the patented improvement contributed to the commercial success.

The court accordingly concluded, correctly even if for wrongly articulated reasons, that claim 1 of the '166 patent is invalid and unenforceable and also disposed of the infringement issue by saying: "An invalid patent cannot be infringed."

## Appellant's Contentions

Richdel attacks the district court's decision by emphasizing claim 1's recitation of a "valve module" as part of the claimed combination. Richdel contends that this term does not read on a package of separate solenoid valves such as those disclosed in the prior art. A valve module, according to Richdel, is a single valve unit comprising separate valve components driven by a single actuator. Richdel contends that its valve module overcame problems with separate solenoid valves which made them unsuitable for drain-down applications and argues that the evidence establishes that the disc valve disclosed in the '166 patent used but a fraction of the power of solenoid valves. It says the district court should have taken judicial notice of the fact that the disc valve avoided problems of clogging and excessive noise. Richdel maintains that it does not matter that the prior art relied on by the trial court was not before the examiner, because the examiner nevertheless had the best art before him, cited it, and still allowed the application.

## OPINION

Although we agree with the district court's decision, we note several errors of law in the analysis contained in the Sunspool-proposed conclusions of law which it adopted.

■ It was error for the trial court to have implicitly required Richdel to prove that the prior art herein had been considered by the PTO; rather, the burden was on Sunspool to show that that prior art had *not* been considered. *See Solder Removal Co. v. ITC,* 65 C.C.P.A. 120, 582 F.2d 628, 633 n. 9, 199 USPQ 129, 133 n. 9 (1978).

■ It was error for the trial court to have shifted the burden of proof and so require Richdel to prove facts necessary to a conclusion of nonobviousness. 35 U.S.C. § 282 *permanently* places the burden of proving facts necessary to a conclusion of invalidity on the party asserting such invalidity. *Stratoflex, Inc., v. Aeroquip Corp.,* 713 F.2d 1530 (Fed.Cir.1983); *Solder Removal,* supra, 582 F.2d at 633, 199 USPQ at 133.

■ It was error for the district court to assert that the *differences* between the claimed invention and the prior art had to be nonobvious; it is the claimed subject matter as a whole which § 103 says must be nonobvious, not the differences.

■ It was error for the district court to derogate the likelihood of finding patentable invention in a combination of old elements. No species of invention is more suspect as a matter of law than any other. Attempted categorization for the purpose of determining varying "rules" detracts from what should be the sole question: whether the *claimed invention* would have

been obvious within the meaning of § 103. Most, if not all, inventions are combinations and mostly of old elements. *Stratoflex, supra,* 713 F.2d at p. 1540.

■ It was also error for the district court to assert that "innovation is not invention." The terms are, at least since the 1952 Patent Act, legally synonymous. Innovation is *always* invention; it may not be *patentable* invention. "Invention," since the advent of § 103, is no longer the prerequisite to patentability which it was prior to 1952. *Graham v. John Deere.*

The district court erred in saying: "Where a *patent* [emphasis ours] is obvious, it cannot be saved from invalidity by resorting to 'secondary factors'." Patents cannot be obvious, only inventions. Much confusion has resulted from confusing patents (government grants) with the inventions disclosed therein. The issue is the obviousness of the *claimed invention,* and that issue can be resolved only after *all* relevant evidence of nonobviousness, including so-called "secondary considerations" if any, has been taken into account. *Stratoflex,* at p. 1538; *In re Sernaker,* 702 F.2d 989, 217 USPQ 1 (Fed.Cir.1983).

■ Notwithstanding these errors, supplied to the court by counsel for the winning party, we hold, based on factual determinations made by the district court which were not clearly erroneous, that it nevertheless reached the proper conclusion of obviousness. The noted errors were not prejudicial to the plaintiff. 28 U.S.C. § 2111.*

We hold that the trial court was correct in asserting that the system disclosed in the Cook patent disclosed every feature of the system claimed in the '166 patent with the exception of the "valve module." We do not read this term as Richdel urges, that is, as a "single valve unit comprising separate valve components driven by a single valve actuator." Nothing in the '166 patent warrants such a reading, nor did any evidence

adduced at trial. Indeed, there is testimony which amply supports the factual conclusion of the trial court that "valve module" is synonymous with a package of valves. Thus, claim 1 is broad enough to read on a solar heating system, such as disclosed in Cook, which includes a valve package such as that offered by Heliotrope General. Such a system would have been obvious to one of ordinary skill, so that claim 1 reads on obvious subject matter, and is therefore invalid.

In reaching our conclusion, we have also considered the evidence offered in support of the assertion that Richdel's system was a commercial success and solved problems which plagued prior art systems. We agree with the trial court, however, that Richdel failed to show that such commercial success as its marketed system enjoyed was due to anything disclosed in the patent in suit which was not readily available in the prior art. Richdel has not even shown that the marketed system corresponds to the system disclosed in its patent as embodying the claimed invention.

For the foregoing reasons, we agree that claim 1 of the '166 patent in suit would have been obvious to one of ordinary skill in the art at the time the invention was made. The claim being invalid there is nothing to be infringed. Similarly, the holding of "unenforceability" is justified only for the reason that claim 1 is invalid, no other ground—such as patent misuse—having been asserted.

The judgment of the district court is *affirmed.*

AFFIRMED.

---

* This section reads:
   § 2111. *Harmless error*
      On the hearing of any appeal or writ of certiorari in any case, the court shall give

judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.