In re Denis **ROUFFET, Yannick Tanguy and Frederic Berthault.**

**No. 97–1492.**

United States Court of Appeals, Federal Circuit.

July 15, 1998.

**1352**

Richard C. Turner and Grant K. Rowan, Sughrue, Mion, Zinn, Macpeak & Seas, PLLC, Washington, DC, argued for appellants.

David J. Ball, Jr., Associate Solicitor, Office of the Solicitor, Patent and Trademark Office, Arlington, Virginia, argued for appellee. With him on the brief were Nancy J. Linck, Solicitor, Albin F. Drost, Deputy Solicitor, and Craig R. Kaufman, Associate Solicitor. Of counsel was Scott A. Chambers, Associate Solicitor, Office of the Solicitor.

Before PLAGER, Circuit Judge, ARCHER, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

Denis Rouffet, Yannick Tanguy, and Frédéric Bethault (collectively, Rouffet) submitted application 07/888,791 (the application) on May 27, 1992. The Board of Patent Appeals and Interferences (the Board) affirmed final rejection of the application as obvious under 35 U.S.C. § 103(a). *See Ex parte Rouffet*, No. 96–1553 (Bd. Pat.App. & Int. Apr. 16, 1997). Because the Board reversibly erred in identifying a motivation to combine the references, this court reverses.

## I.

Satellites in a geosynchronous or geostationary orbit remain over the same point on the Earth's surface. Their constant position above the Earth's surface facilitates communications. These satellites project a number of beams to the Earth. Each beam transmits to its area of coverage, or footprint, on the Earth's surface. In order to provide complete coverage, adjacent footprints overlap slightly and therefore must use different frequencies to avoid interference. However, two or more non-overlapping footprints can use the same set of frequencies in order to use efficiently the limited radio spectrum. Figure 1 from the application shows the coverage of a portion of the Earth's surface provided by multiple cone shaped beams:

# FIG. 1

Frequency reuse techniques, however, have a limited ability to compensate for congestion in geostationary orbits. To alleviate the orbit congestion problem, new telecommunications systems use a network of satellites in low Earth orbit. When viewed from a fixed point on the Earth's surface, such satellites do not remain stationary but move overhead. A satellite's motion as it transmits a plurality of cone-shaped beams creates a new problem. The satellite's movement causes a receiver on the Earth's surface to move from the footprint of one beam into a second beam transmitted by the same satellite. Eventually, the satellite's motion causes the receiver to move from the footprint of a beam transmitted by one satellite into the footprint of a beam transmitted by a second satellite. Each switch from one footprint to another creates a "handover" event analogous to that which occurs when a traditional cellular phone travels from one cell to another. Handovers are undesirable because they can cause interruptions in signal transmission and reception.

Rouffet's application discloses technology to reduce the number of handovers between beams transmitted by the same satellite. In particular, Rouffet eliminates handovers caused solely by the satellite's motion. To accomplish this goal, Rouffet changes the shape of the beam transmitted by the satellite's antenna. Rouffet's satellites transmit fan-shaped beams. A fan beam has an elliptical footprint. Rouffet aligns the long axis of his beams parallel to the direction of the satellite's motion across the Earth's surface. By elongating the beam's footprint in the direction of satellite travel, Rouffet's invention ensures that a fixed point on the Earth's surface likely will remain within a single footprint until it is necessary to switch to another satellite. Because Rouffet's invention does not address handovers caused by the motion of the receiver across the Earth's

surface. his arrangement reduces, but does not eliminate, handovers. Figure 3 from the application shows the footprints 12 from six beams aligned in the direction of satellite motion 15:

# FIG. 3

The application contains ten claims that stand or fall as a group. Claim 1 is representative:

A low orbit satellite communications system for mobile terminals, wherein the communications antenna system of each satellite provides isoflux coverage made up of a plurality of fan beams that are elongate in the travel direction of the satellite.

The examiner initially rejected Rouffet's claims as unpatentable over U.S. Pat. No. 5,199,672 (King) in view of U.S. Pat. No. 4,872,015 (Rosen) and a conference report entitled "A Novel Non–Geostationary Satellite Communications System," *Conference Record*, International Conference on Communications, 1981 (Ruddy). On appeal to the Board, the examiner added an alternative ground for rejection, holding that the claims were obvious over U.S. Pat. No. 5,394,561 (Freeburg) in view of U.S. Pat. No. 5,170,485 (Levine).

On April 16, 1997, the Board issued its decision. Because Rouffet had specified that the claims would stand or fall as a group based on the patentability of claim 1, the Board limited its opinion to that claim. The Board unanimously determined that the examiner had properly rejected claim 1 as obvious over King in view of Rosen and Ruddy. The Board, on a split vote, also affirmed the rejection over Freeburg in view of Levine.

II

To reject claims in an application under section 103, an examiner must show an unrebutted *prima facie* case of obviousness. *See In re Deuel*, 51 F.3d 1552, 1557, 34 U.S.P.Q.2d 1210, 1214 (Fed.Cir.1995). In the absence of a proper *prima facie* case of obviousness, an applicant who complies with the other statutory requirements is entitled to a patent. *See In re Oetiker*, 977 F.2d 1443, 1445, 24 U.S.P.Q.2d 1443, 1444 (Fed. Cir.1992). On appeal to the Board, an applicant can overcome a rejection by showing insufficient evidence of *prima facie* obviousness or by rebutting the *prima facie* case with evidence of secondary indicia of nonobviousness. *See id.*

While this court reviews the Board's determination in light of the entire record, an applicant may specifically challenge an obviousness rejection by showing that the Board reached an incorrect conclusion of obviousness or that the Board based its obviousness determination on incorrect factual predicates. This court reviews the ultimate determination of obviousness as a question of law. *See In re Lueders*, 111 F.3d 1569, 1571, 42 U.S.P.Q.2d 1481, 1482 (Fed. Cir.1997). The factual predicates underlying an obviousness determination include the scope and content of the prior art, the differences between the prior art and the claimed invention, and the level of ordinary skill in the art. *See Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881, 45 U.S.P.Q.2d 1977, 1981 (Fed.Cir.1998). This court reviews the Board's factual findings for clear error. *See In re Zurko*, 142 F.3d 1447, 1449, 46 U.S.P.Q.2d 1691, 1693 (Fed.Cir.1998) (in banc); *Lueders*, 111 F.3d at 1571–72. " 'A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *In re Graves*, 69 F.3d 1147, 1151, 36 U.S.P.Q.2d 1697, 1700 (Fed.Cir.1995) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

The secondary considerations are also essential components of the obviousness determination. *See In re Emert*, 124 F.3d 1458, 1462, 44 U.S.P.Q.2d 1149, 1153 (Fed. Cir.1997) ("Without Emert providing rebuttal evidence, this *prima facie* case of obviousness must stand."). This objective evidence of nonobviousness includes copying, long felt but unsolved need, failure of others, *see Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), commercial success, *see In re Huang*, 100 F.3d 135, 139–40, 40 U.S.P.Q.2d 1685, 1689–90 (Fed.Cir. 1996), unexpected results created by the claimed invention, unexpected properties of the claimed invention, *see In re Mayne*, 104 F.3d 1339, 1342, 41 U.S.P.Q.2d 1451, 1454 (Fed.Cir.1997); *In re Woodruff*, 919 F.2d 1575, 1578, 16 U.S.P.Q.2d 1934, 1936–37 (Fed. Cir.1990), licenses showing industry respect for the invention, *see Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957, 43 U.S.P.Q.2d 1294, 1297 (Fed.Cir.1997); *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 316, 227 U.S.P.Q. 766, 771 (Fed.Cir. 1985), and skepticism of skilled artisans before the invention, *see In re Dow Chem. Co.*, 837 F.2d 469, 473, 5 U.S.P.Q.2d 1529, 1532 (Fed.Cir.1988). The Board must consider all of the applicant's evidence. *See Oetiker*, 977 F.2d at 1445 ("An observation by the Board that the examiner made a *prima facie* case is not improper, as long as the ultimate determination of patentability is made on the entire record."); *In re Piasecki*, 745 F.2d 1468, 1472, 223 U.S.P.Q. 785, 788 (Fed.Cir.1984). The court reviews factual conclusions drawn from this evidence for clear error. Whether the evidence presented suffices to rebut the *prima facie* case is part of the ultimate conclusion of obviousness and is therefore a question of law.

When a rejection depends on a combination of prior art references, there must be some teaching, suggestion, or motivation to combine the references. *See In re Geiger*, 815 F.2d 686, 688, 2 U.S.P.Q.2d 1276, 1278 (Fed.Cir.1987). Although the suggestion to combine references may flow from the nature of the problem, *see Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573, 37 U.S.P.Q.2d 1626, 1630 (Fed. Cir.1996), the suggestion more often comes from the teachings of the pertinent references, *see In re Sernaker*, 702 F.2d 989, 994, 217 U.S.P.Q. 1, 5 (Fed.Cir.1983), or from the ordinary knowledge of those skilled in the art that certain references are of special impor-

tance in a particular field, *see Pro–Mold*, 75 F.3d at 1573 (citing *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 297 n. 24, 227 U.S.P.Q. 657, 667 n. 24 (Fed.Cir.1985)). Therefore, "[w]hen determining the patentability of a claimed invention which combines two known elements, 'the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination.'" *See In re Beattie*, 974 F.2d 1309, 1311–12, 24 U.S.P.Q.2d 1040, 1042 (Fed.Cir.1992) (quoting *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1462, 221 U.S.P.Q. 481, 488 (Fed.Cir.1984)).

### III

The parties agree that the five references asserted by the examiner are in the same field of endeavor as the invention. The parties also agree that the pertinent level of skill in the art—design of satellite communications systems—is high. On appeal, Rouffet asserts that the examiner and the Board erred by improperly combining references to render the claimed invention obvious.

### The Combination of King, Rosen, and Ruddy

The Board first affirmed the rejection of Rouffet's claims over a combination of King, Rosen, and Ruddy. King discloses a system for launching a plurality of satellites into low Earth orbits from a single launch vehicle. Rosen teaches a geostationary satellite that uses a plurality of fan beams with their long axes oriented in an east-west direction to communicate with mobile and fixed terminals on the Earth.

The final, and most important, reference in this combination is Ruddy. Ruddy describes a television broadcast system that uses a series of satellites to retransmit signals sent from a ground station over a wide area. Rather than using a geostationary orbit, Ruddy teaches the use of a series of satellites in Molniya orbits. A satellite in a Molniya orbit always follows the same path through the sky when viewed from a fixed point on the ground. Viewed from the Earth, the orbital path includes a narrow, elliptical apogee loop. In order to transmit to these moving satellites from a ground station, Ruddy uses a fan beam with a long axis aligned with the long axis of the orbit's apogee loop. This alignment places the entire apogee loop within the footprint of the beam and eliminates the need for the ground station's antenna to track the satellite's motion around the apogee loop. Ruddy further teaches orbit parameters and spacing of multiple satellites to ensure that a satellite is always in the loop to receive and rebroadcast signals from the Earth station.

King and Rosen together teach the use of a network of satellites in low Earth orbit. Thus, Ruddy becomes the piece of the prior art mosaic that shows, in the reading of the Board, the use of "a plurality of fan beams that are elongate in the travel direction of the satellite." Ruddy, however, is different from the claimed invention in several respects. Specifically, the application claims the projection of multiple elliptical fan-shaped footprints from the satellite to the ground. *See* Claim 1, *supra, see also* Application at 6, lines 9–11 ("In addition, in this system, the geometrical shape of the beams 12 is changed: instead of being circular they are now elongate ellipses."). The application's written description further teaches that the invention's fan-shaped satellite beams will minimize handovers. *See id.* at lines 11–16 ("This considerably increases call durations between handovers.").

In contrast, Ruddy teaches that a ground station may use a single fan-shaped beam to transmit to a satellite in a unique Molniya orbit. The ground station transmits a beam into which a series of satellites in Molniya orbits will successively enter. At least two differences are evident: the application teaches projection of multiple beams from a satellite to the Earth, while Ruddy teaches projection of a single beam from the Earth to satellites. Moreover to the extent Ruddy contains a teaching about handovers, its teachings focus on use of the unique Molniya orbit to ensure that a satellite always falls within the beam transmitted by the ground station.

These differences suggest some difficulty in showing a *prima facie* case of obviousness. The Board, however, specifically found that artisans of ordinary skill in this field of art would know to shift the frame of reference from a ground station following a satellite to a satellite transmitting to the ground. According proper deference to the Board's find-

ing of a lofty skill level for ordinary artisans in this field, this court discerns no clear error in the Board's conclusion that these differences would not preclude a finding of obviousness. While Ruddy does not expressly teach alignment of the fan beam with the apparent direction of the satellite's motion, this court perceives no clear error in the Board's determination that Ruddy would suggest such an alignment to one of skill in this art. Therefore, the Board did not err in finding that the combination of King, Rosen, and Ruddy contains all of the elements claimed in Rouffet's application.

· However, the Board reversibly erred in determining that one of skill in the art would have been motivated to combine these references in a manner that rendered the claimed invention obvious. Indeed, the Board did not identify any motivation to choose these references for combination. Ruddy does not specifically address handover minimization. To the extent that Ruddy at all addresses handovers due to satellite motion, it addresses this subject through the selection of orbital parameters. Ruddy does not teach the choice of a particular shape and alignment of the beam projected by the satellite. Thus Ruddy addresses the handover problem with an orbit selection, not a beam shape. The Board provides no reasons that one of ordinary skill in this art, seeking to minimize handovers due to satellite motion, would combine Ruddy with Rosen and King in a manner that would render the claimed invention obvious.

■ Obviousness is determined from the vantage point of a hypothetical person having ordinary skill in the art to which the patent pertains. See 35 U.S.C. § 103(a). This legal construct is akin to the "reasonable person" used as a reference in negligence determinations. The legal construct also presumes that all prior art references in the field of the invention are available to this hypothetical skilled artisan. See In re Carlson, 983 F.2d 1032, 1038, 25 U.S.P.Q.2d 1207, 1211 (Fed. Cir.1993).

As this court has stated, "virtually all [inventions] are combinations of old elements." *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 698, 218 U.S.P.Q. 865, 870 (Fed.Cir.1983); see also *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1579–80, 219 U.S.P.Q. 8, 12 (Fed.Cir.1983) ("Most, if not all, inventions are combinations and mostly of old elements."). · Therefore an examiner may often find every element of a claimed invention in the prior art. If identification of each claimed element in the prior art were sufficient to negate patentability, very few patents would ever issue. Furthermore, rejecting patents solely by finding prior art corollaries for the claimed elements would permit an examiner to use the claimed invention itself as a blueprint for piecing together elements in the prior art to defeat the patentability of the claimed invention. Such an approach would be "an illogical and inappropriate process by which to determine patentability." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1570, 38 U.S.P.Q.2d 1551, 1554 (Fed.Cir.1996).

To prevent the use of hindsight based on the invention to defeat patentability of the invention, this court requires the examiner to show a motivation to combine the references that create the case of obviousness. In other words, the examiner must show reasons that the skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed.

This court has identified three possible sources for a motivation to combine references: the nature of the problem to be solved, the teachings of the prior art, and the knowledge of persons of ordinary skill in the art. In this case, the Board relied upon none of these. Rather, just as it relied on the high level of skill in the art to overcome the differences between the claimed invention and the selected elements in the references, it relied upon the high level of skill in the art to provide the necessary motivation. The Board did not, however, explain what specific understanding or technological principle within the knowledge of one of ordinary skill in the art would have suggested the combination. Instead, the Board merely invoked the high level of skill in the field of art. If such a rote invocation could suffice to supply a motivation to combine, the more sophisticated scientific fields would rarely, if ever, experience a patentable technical advance. Instead, in complex scientific fields, the Board could routinely identify the prior art elements in an application, invoke the lofty level of skill, and rest its case for rejection. To counter this potential weakness in the obvi-

ousness construct, the suggestion to combine requirement stands. as a critical safeguard against hindsight analysis and rote application of the legal test for obviousness.

Because the Board did not explain the specific understanding or principle within the knowledge of a skilled artisan that would motivate one with no knowledge of Rouffet's invention to make the combination, this court infers that the examiner selected these references with the assistance of hindsight. This court forbids the use of hindsight in the selection of references that comprise the case of obviousness. *See In re Gorman,* 933 F.2d 982, 986, 18 U.S.P.Q.2d 1885, 1888 (Fed.Cir. 1991). Lacking a motivation to combine references, the Board did not show a proper *prima facie* case of obviousness. This court reverses the rejection over the combination of King, Rosen, and Ruddy.

*The Combination of Freeburg and Levine*

 Freeburg teaches a cellular radio-telephone system based on a constellation of low Earth orbit satellites that use conical beams to transmit from the satellite to both fixed and mobile Earth stations. Levine teaches an Earth-based cellular radio system that uses fan beams broadcast from antenna towers. Levine's elliptical footprints are aligned with the road grid. To increase the capacity of traditional ground-based systems through frequency reuse techniques, Levine teaches the use of antennas that broadcast signals with smaller footprints than the prior art system. Thus, Levine actually increases the number of overlap regions between cells and, hence, the number of potential handovers. Figure 1 of the Levine patent illustrates its alignment of beam footprints:

FIG.1

As a mobile unit (e.g., a driver using a car phone) moves though a succession of overlapping zones, Levine uses selection algorithms to determine which of the cells is aligned with the travel direction of the mobile unit. These algorithms then select this cell for use while continually monitoring intersecting cells in the event that the mobile unit changes direction.

Once again, this court notes significant differences between the teachings of the application and the Levine–Freeburg combination. The critical Levine reference again involves a beam from an Earth station without any reference to the "travel direction of [a] satellite." Moreover, Levine actually multiplies the number of potential handovers and then uses software to sort out the necessary handovers from the unnecessary. However, the Board explains the reasons that one possessing the lofty skills characteristic of this field would know to account for the differences between the claimed invention and the prior art combination. This court discerns no clear error in that reliance on the considerable skills in this field.

This court does, however, discern reversible error in the Board's identification of a motivation to combine Levine and Freeburg. In determining that one of skill in the art would have had motivation to combine Levine and Freeburg, the Board noted that "[t]he level of skill in the art is very high." As noted before, this observation alone cannot supply the required suggestion to combine these references. The Board posits that the high level of skill in the art overcomes the absence of any actual suggestion that one could select part of the teachings of Levine for combination with the satellite system disclosed by Freeburg.

As noted above, the suggestion to combine requirement is a safeguard against the use of hindsight combinations to negate patentability. While the skill level is a component of the inquiry for a suggestion to combine, a lofty level of skill alone does not suffice to supply a motivation to combine. Otherwise a high level of ordinary skill in an art field would almost always preclude patentable inventions. As this court has often noted, invention itself is the process of combining prior art in a nonobvious manner. *See, e.g., Richdel,* 714 F.2d at 1579; *Environmental Designs,* 713 F.2d at 698. Therefore, even when the level of skill in the art is high, the Board must identify specifically the principle, known to one of ordinary skill, that suggests the claimed combination. *Cf. Gechter v. Davidson,* 116 F.3d 1454, 43 U.S.P.Q.2d 1030 (Fed.Cir.1997) (explaining that the Board's opinion must describe the basis for its decision). In other words, the Board must explain the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious.

The Board's naked invocation of skill in the art to supply a suggestion to combine the references cited in this case is therefore clearly erroneous. Absent any proper motivation to combine part of Levine's teachings with Freeburg's satellite system, the rejection of Rouffet's claim over these references was improper and is reversed.

## IV

The Board reversibly erred in determining that there was a motivation to combine either the teachings of King, Rosen, and Ruddy or of Freeburg and Levine in a manner that would render the claimed invention obvious. Because this predicate was missing in each case, the Board did not properly show that these references render the claimed invention obvious. Therefore this court reverses the Board's decision upholding the rejection of Rouffet's claims. In light of this disposition, Rouffet's pending motion to remand the case to the Board for further consideration is denied as moot.

## COSTS

Each party shall bear its own costs.

*REVERSED.*