160 F.3d 1345
 48 U.S.P.Q.2d 1631
 Lynn J. ANDERSON and Koronis Parts, Inc., Plaintiffs-Appellants,
v.
INTERNATIONAL ENGINEERING AND MANUFACTURING, INC.,
Defendant/Cross-Appellant,
and
Roetin Industries, Defendant-Appellee,
W. Fast-Trac Industries, Defendant-Appellee,
Saber, Inc., Defendant-Appellee,
Bottom Line Traction Products, Inc., Defendant-Appellee.
 Nos. 98-1062, 98-1063, 98-1064, 98-1065, 98-1066, 98-1067, 98-1068.
 United States Court of Appeals,
Federal Circuit.
 Nov. 2, 1998.
 
 Nickolas E. Westman, Westman, Champlin & Kelly, P.A., of Minneapolis, Minnesota, for defendant-appellee, Bottom Line Traction Products, Inc. With him on the brief was Joseph R. Kelly.
 Stephen B. Salai, Cumpston & Shaw, Rochester, New York, for defendant-appellee, Roetin Industries. Of counsel was Thomas J. Stueber, Kinney & Lange, of Minneapolis, Minnesota.
 James F. Boyle, Nilles & Nilles, South Carolina, argued for defendant-appellee, Saber, Inc.
 Joseph N. Hosteny, Niro Scavone, of Chicago, Illinois, for defendant-appellee, W. Fast-Trac Industries.
 Owen E. Perry, Reising, Ethington, Learman & McCulloch, of Troy, Michigan, argued for defendant cross-appellant, International Engineering and Manufacturing, Inc. With him on the brief was Francis J. Fodale. Of counsel was John J. Swartz, Swartz & Wilson, of Saginaw, Michigan.
 Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 Lynn J. Anderson and Koronis Parts, Inc. ("Anderson"), owners of reexamined United States Patent No. B1 4,758,055 ("the '055 patent") entitled "Snowmobile Stud," filed suit in the United States District Court for the District of Minnesota, alleging infringement by appellees, five snowmobile track makers. Anderson moved for summary judgment of infringement, and appellees moved for summary judgment of invalidity on the ground that Anderson impermissibly broadened the '055 claims upon reexamination. The court granted appellees' motion, stayed further proceedings, and entered final judgment of invalidity.[1] We affirm the judgment.
 
 BACKGROUND
 
 2
 The invention of the '055 patent relates to a method of inserting and securing small pointed studs into snowmobile tracks. The studs provide additional traction, of particular advantage at high speeds on ice.
 
 
 3
 The snowmobile tracks of the '055 patent are made of flexible, resilient material. In installing the studs so that the pointed ends protrude outwardly from the track, it is important to achieve a smooth surface on the inside of the track that is in contact with the snowmobile's drive mechanism. According to the description of the preferred embodiment in the specification of the '055 patent, when the stud is installed into the track the stud head is gripped by a tool and held at the sides of the head as the stud is drawn into the track by action of a tightening nut. When the top surface of the stud head is drawn substantially even with the resilient inside surface of the track, the tool is automatically disengaged from the stud head by contact with the resilient track; the stud head can no longer be gripped by the tool, the head is free to rotate and the nut can not be further tightened, signalling that the installation is complete. This tightening action is illustrated in the following figures of the '055 patent:NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 4
 Figure 9 depicts the stud (10) before it 0) before it is secured to the resilient track (25), with the stud head (14) gripped by a tool (34), ready for installation. A metal cleat (30) that is wider than the stud head rests against the outer surface of the track, and when the lock nut (20) is tightened the cleat prevents it from becoming embedded in the track. Tightening the nut draws the stud head into the track, as shown in the partially assembled view of Figure 10, until the resiliency of the track causes the tool to disengage from the stud head. The stud then becomes free to rotate, and further turning of the lock nut has no tightening effect. This rotation avoids undue compression of the track and irregularities in the inner surface of the track.
 
 
 5
 The issue on motion for summary judgment was whether the claims, original and reexamined, encompass a system in which the tool continues to grip the stud head after it is drawn completely into the track, such that instead of automatic disengagement the tool is manually removed. In appellees' system the tool is held so that it grips and follows the head as it is drawn into the resilient track, and retains its grip on the head until it is manually disengaged by the installer. Anderson states that the reexamined claims clarify that his system does not require automatic disengagement of the tool when the stud is fully installed; on this claim interpretation the claims would be infringed by the appellees' snowmobile stud assembly systems.
 
 
 6
 According to appellees, if the claims as modified on reexamination are read broadly enough to reach appellees' systems, as Anderson argues, the claims were impermissibly enlarged and are invalid. Thus the dispositive question is whether the original claims have the meaning sought by Anderson for the reexamined claims. If the original claims, correctly construed, encompass a system that does not automatically disengage the stud head from the tool, then the claims were not impermissibly broadened on reexamination. But if the original claims are limited to automatic disengagement of the tool by action of the resilient track, then on Anderson's interpretation of the reexamined claims they are broadened in scope, contrary to 35 U.S.C. s305.
 
 DISCUSSION
 
 7
 At issue are reexamined claims 1-6 and 12. Claim 1, the only independent claim, is directed to the entire track assembly. Portions relevant to the installation of the stud follow:1. A single snowmobile stud assembly for attachment to a flexible resilient snowmobile track of predetermined thickness for engaging ice, by using a tool, said resilient snowmobile track having an inner surface and an outer surface, said stud assembly comprising:
 
 
 8
 . . . . .
 
 
 9
 a head, said head having a surface area, and said head connected to [one] said first end of said cylindrical member, said head comprising a first section of predetermined size for engaging [a first] the inner surface of a snowmobile track of predetermined thickness and a second section for extending substantially [coplanar] parallel to the [outer] inner surface of [a] the snowmobile track, said head free of surfaces that may cut and wear the snowmobile track if said stud rotates in use, said head including surfaces for engagement with [a] the tool to prevent rotation of the stud as the stud is applied to [a] the resilient snowmobile track, said cylindrical member having a length extending substantially perpendicular [from] to said head, said cylindrical member having an intermediate threaded section for engaging [a] said threaded [fastening member] fastener, said cylindrical section [having a] terminating in a single, sharp point at said pointed end for engaging ice [or the like]; and
 
 
 10
 [a threaded fastener for holding said stud to said track; and]
 
 
 11
 a member for placing against [a second] the outer surface of [a] the resilient snowmobile track to thereby sandwich [a] the resilient snowmobile track between said head and said member, said member having a larger surface area than said surface area of said head, to thereby cause said head to be drawn into [a] the resilient snowmobile track in a direction away from the tool with the tool engaging said head surfaces as said threaded fastener is rotated to compressedly sandwich [a] the resilient snowmobile track between said member and said head[.], ...
 
 
 12
 The brackets represent deletions and the italicized text additions on reexamination.
 
 
 13
 The district court focussed on whether claim 1 was materially enlarged by the addition of "in a direction" away from the tool "with the tool engaging said head surfaces," as compared with the original text of claim 1. The district court described the issue as: "The difference involves whether the tool follows the head until the person installing the stud removes the tool from the head, in contrast to automatic disengagement during tightening." The district court held that original claim 1 excluded the scope wherein the tool remains engaged with the head surfaces until it is manually removed. The court concluded that under Anderson's interpretation of the reexamined claim scope--an interpretation necessary to establish infringement--the claim was invalid.
 
 
 14
 Anderson argues that no conflict exists between the language of claim 1 before and after reexamination, stating that the claims have always encompassed an assembly wherein the tool may remain engaged with the stud head after it is drawn into the resilient track. Anderson states that the claims, both before and after reexamination, are generic to the disengagement of the tool either automatically or manually when the assembly is completed.
 
 
 15
 The appellees dispute this claim interpretation. They state that the phrase "away from the tool" in original claim 1 means that the stud head becomes disengaged from the tool as the head is drawn into the track, by action of the track itself. Anderson responds that this phrase merely recites the direction of movement of the stud head into the track, and that "As originally written, it is clear that the tool does not disengage from the head surfaces as well."
 
 
 16
 Anderson directs us to the dictionary definition of "away" as meaning "in another, especially the opposite, direction." American Heritage Dictionary of the English Language 92 (college ed.1976). We take notice that other dictionary definitions of "away" state that this term can also denote separation: "separate; detached; out of one's possession; as, to give away a secret; to put away a temptation." Webster's New Universal Unabridged Dictionary 131 (dlx.2d ed.1983). These definitions all reflect common usages of "away," and reinforce the observation that dictionary definitions of ordinary words are rarely dispositive of their meaning in a technological context. A word describing patented technology takes its definition from the context in which it was used by the inventor.
 
 
 17
 Appellees state that the specification describes only automatic disengagement of the tool as the stud head is drawn into the track, pointing to the description that the tool grips the head "until the resiliency of the track causes the tool to disengage the head." '055 patent, column 3, lines 44-45. This description was added to the specification during prosecution of the original patent, and was accompanied by Anderson's explanation to the examiner that "As the head 14 is drawn into the resilient belt, the ends of the head disengage the tool. If the belt were solid and not resilient, the head could not be drawn into the belt and the tool could not be disengaged." In an examiner interview summary the examiner wrote that "Claims 1 and 11 were amended [ ] to further claim the head of the stud and how it is drawn into the track, to define over the prior art."
 
 
 18
 The reexamination statute provides that "No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." 35 U.S.C. s305. In determining whether the scope of a claim has been enlarged, the reexamination practice has shared the body of precedent developed for reissue determinations. Thus this court has held that a change of words does not always mean change of scope, and that the question of whether the claims have been materially or substantially enlarged must be determined upon the claim as a whole. See Mentor Corp. v. Coloplast, Inc., 998 F.2d 992, 996, 27 USPQ2d 1521, 1525 (Fed.Cir.1993) ("Reissue claims that are broader in certain respects and narrower in others may avoid the effect of the recapture rule.") However, in Mentor the court explained that if the patentee is seeking to recover subject matter that had been surrendered during the initial prosecution this flexibility of analysis is eliminated, for the prosecution history establishes the substantiality of the change and estops its recapture. See In re Clement, 131 F.3d 1464, 1468, 45 USPQ2d 1161, 1164 (Fed.Cir.1997). Thus although the circumstances of presentation in the specification may temper the general rule that broadening of any term of a claim is fatal, even when other terms are narrowed, see generally Quantum Corp. v. Rodime PLC, 65 F.3d 1577, 1580, 36 USPQ2d 1162, 1165 (Fed.Cir.1995); In re Freeman, 30 F.3d 1459, 1464, 31 USPQ2d 1444, 1447 (Fed.Cir.1994), it is appropriate to consider other factors including whether the applicant intended to have originally covered the challenged subject matter. In re Amos, 953 F.2d 613, 619, 21 USPQ2d 1271, 1276 (Fed.Cir.1991).
 
 
 19
 Anderson states that the changes made in reexamined claim 1 simply clarified the scope of the claim as originally granted. Anderson states that the intent was to claim the assembly in generic terms in original claim 1, covering not only assemblies wherein the tool disengages of itself, but where the tool is manually disengaged. Anderson states that original claim 1 was not intended to be, and indeed was not, limited to automatic disengagement. The question of claim scope before and after reexamination is a matter of claim construction, and thus is subject to de novo review on appeal. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454-56, 46 USPQ2d 1169, 1172-75 (Fed.Cir.1998) (in banc).
 
 
 20
 The ultimate question of construction is not whether Anderson's specification could have supported claims of the scope he now attributes to original claim 1--although that would be a factor in determining the correct claim construction. The question is whether, objectively viewed, the original claims were, in fact and law, generic as Anderson asserts. We conclude, as did the district court, that the original claims were directed only to automatic disengagement. The '055 patent specification is explicit, and does not suggest or imply the broader concept now urged by Anderson. At column 3, lines 42-45, the specification explains that drawing the stud head into the track causes the tool to disengage from the head. At column 3, lines 57-59, it is stated that "as the head 14 of stud 10 is drawn inward the wrench jaws 34 and 35 lose contact with the surface 15a [the sides of the head]." The patent drawings depict the stud head as it progresses toward disengagement from the tool; Figure 10, shown supra, depicts the head sinking into the resilient track while the tool remains on the surface gripping the exposed portions of the sides of the head. The prosecution history contains statements by the applicant explaining that the head is drawn into the track until the tool becomes disengaged from the head. The text of original claim 1 accords with these descriptions, and the most direct reading of the claim is that it is limited to the system described in the specification.
 
 
 21
 We conclude that original claim 1 is limited to systems wherein the stud head is automatically disengaged from the tool, and is not generic to systems wherein the tool remains engaged with the head until it is manually removed upon completion of assembly. Since Anderson's position is that the reexamined claims have this broader meaning, we affirm the ruling of the district court that reexamination claim 1 and dependent claims 2-6 and 12 are invalid.[2]
 
 
 22
 The cross-appeal, which relates to additional allegations of broadening, is mooted and is dismissed.
 
 AFFIRMED; CROSS-APPEAL DISMISSED
 
 
 [1]
 Anderson v. International Eng'g & Mfg., Inc., Civil No. 4-95-248 (D.Minn., Sept. 10, 1996)
 
 
 [2]
 In Quantum, 65 F.3d at 1584, 36 USPQ2d at 1168 the court held that it does not have equitable power to restore reexamined claims to their original scope. Although Anderson states in its reply brief that Saber, Inc. may be infringing the claims in their original scope, Anderson has not brought such an action. In Quantum the court in dictum deemed it inequitable to permit a patentee to recover its original claim scope after unsuccessfully litigating the issue of compliance with the reexamination rule prohibiting enlargement of scope